FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 01, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYAN HARTER,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNITED STATES POSTAL SERVICE, and NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO,<br><br>                    Defendants. | NO:  2:19-CV-161-RMP<br><br>ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant National Association of Letter Carriers, AFL-CIO's ("NALC") Motion for Summary Judgment, ECF No. 27.  Defendant United States Postal Service ("USPS") has joined NALC's Motion for Summary Judgment, ECF No. 31.

On January 14, 2021, the Court heard oral argument on NALC's motion. Peter DeChiara appeared on behalf of NALC.  Assistant United States Attorney John Drake appeared for USPS.  Plaintiff, Ryan Harter, was represented by Jeffry Finer.

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 1

The Court has reviewed the motion, the record, heard oral argument, and is fully informed.

## BACKGROUND

Plaintiff Ryan Harter ("Harter") was employed as a city letter carrier by USPS from 2014 to 2018 in Spokane, Washington. ECF No. 27-3 at 7. Harter worked as a non-career City Carrier Assistant until December 2016, after which he became a career letter carrier. *Id.* at 7–8. While employed by USPS, Harter was a member of National Association of Letter Carriers ("NALC") Branch 442. *Id.* at 8.

NALC is a labor union that serves as the collective bargaining representative for all city letter carriers employed by USPS. ECF No. 27-5 at 2. Branch 442 is a local affiliate of NALC that represents city letter carriers employed at postal installations in Spokane, Washington. *Id.* USPS and NALC are parties to a collective bargaining agreement ("CBA") that governs the terms and conditions of employment of city letter carriers. *Id.* Article 15 of the CBA sets forth a grievance-arbitration procedure. ECF No. 27-6 at 9–22.

While Harter was employed by USPS, management disciplined Harter on multiple occasions, and NALC Branch 442 successfully had the discipline reduced each time. *See* ECF Nos. 27-1 at 6, 44 at 2 (August 23, 2016: 14-day suspension reduced to a letter of warning); (November 16, 2016: 14-day suspension reduced to a

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 2

letter of warning); (February 9, 2018: 14-day suspension reduced to 7-day suspension).

**Events Giving Rise to Removal**

On January 18, 2018, Harter tore a knee ligament while at work which resulted in him being on leave from January 2018 through mid-April 2018. ECF No. 27-3 at 8–11. While on leave, Harter received workers compensation benefits from the United States Department of Labor's Office of Workers Compensation. *Id.* at 11. The workers compensation doctor who examined Harter imposed certain medical restrictions, including that Harter was not allowed to drive a vehicle. *Id.* at 13. However, Harter continued to drive "within reason" to appointments and to submit paperwork to the Post Office. *Id.* at 20–21.

Harter's parents, Daniel and Sarina Harter, own Ruby Street Motors, a used car dealership in Spokane. *Id*. at 22–23. On March 1, 2018, Harter flew from Washington State to California. *Id*. at 28–29. Harter then helped his family transport four cars approximately 1,700 miles from California to Washington State for Ruby Street Motors. *Id*. at 35.

On March 29, 2018, after Harter had returned to work, USPS manager Steven Dokken interviewed him. ECF No. 27-3 at 49, 121. At Harter's request, Branch 442 provided a steward, Amanda Ray, to attend the interview. ECF No. 27-3 at 49. During the interview, Dokken asked Harter how he got back from California.

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    According to Dokken's notes of the meeting, Harter's deposition testimony, and

2    Harter's NLRB affidavit, Harter answered: "I flew down there" and "I drove back."

3    ECF No. 27-3 at 54, 122; ECF No. 27-7 at 61 ("flew down and I drove back up

4    through Wyoming").  However, Harter disputes the accuracy of Dokken's notes and

5    stated in his NLRB affidavit that "[he] didn't mean . . . that I physically drove the

6    car back."  ECF No. 27-3 at 122.

7        Dokken conducted a second interview of Harter on April 3, 2018.  ECF No.

8    27-1. at 10.  Branch 442 steward Ray attended the interview.  *Id.*  At the second

9    interview, according to Dokken's notes and Harter's deposition testimony, Dokken

10   asked him "[h]ow many hours a day did you spend driving?" and Harter responded,

11   "each day was different; 500 miles at one time."  ECF Nos.  27-3 at 63–64, 27-7 at

12   65.  Harter clarifies that Dokken's question was allegedly referring to the caravan of

13   four cars returning from California and the question did not specify "you" singular

14   or "you" plural.  ECF No. 44 at 11.

15       According to Dokken's notes of the meeting and Harter's deposition

16   testimony, Dokken asked him "[h]ow were you able to drive for your parent's place

17   of business when the work restrictions you were under from 2/19/2018 to 3/22/2018

18   state you are unable to drive for work," and Harter responded, "I didn't catch that I

19   couldn't drive for work."  ECF Nos. 27-3 at 64–66, 27-7 at 66.  Harter testified that

20   "It's fair to say on April 3 I had forgotten I couldn't drive."  ECF No. 27-3 at 66.

21

Harter also told Dokken that he would drive his personal car to pick up parts for Ruby Street Motors so his parents would not have to wait for a delivery driver. ECF No. 27-7 at 66. However, Harter testified that when he made that statement, he was lying. ECF No. 27-3 at 69.

On April 20, 2018, USPS issued Harter a notice of removal from USPS employment. *Id.* at 71, ECF No. 27-6 at 61–67. The notice of removal charged Harter with, among other things, having engaged in unacceptable conduct "when [he] engaged in activity for another business performing tasks in violation of medical restrictions [he] submitted which prevented [him] from working for the Postal Service and entitled [him] to compensation as a result of a work-related injury." ECF No. 27-6 at 61. The notice of removal cited prior discipline that Harter had received including two letters of warning and a 7-day suspension. *Id.* at 65.

**Grievance-Arbitration Procedure**

Branch 442 filed a grievance against USPS for the notice of removal issued to Harter. ECF Nos. 27-3 at 73, 27-6 at 69. The Informal Step A meeting took place on May 5, 2018. ECF No. 26-3 at 72. At Informal Step A, the aggrieved employee and the employee's immediate supervisor discuss the grievance. ECF No. 27-6 at 10. USPS manager Dokken, union steward Amanda Ray, and Harter attended the Informal Step A meeting. ECF No. 27-3 at 72.

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 5

1       Dokken offered to settle the grievance by reducing the removal to a 14-day

2 suspension with a last chance agreement. *Id*. at 73. Harter rejected the offer. *Id*. A

3 last chance agreement requires an employee to follow the stated rules, and

4 depending on the terms of the agreement, a violation can lead to removal at the

5 discretion of management. ECF No. 44 at 12. Dokken did not have a proposed last

6 chance agreement to show Harter, nor did he describe the terms of the agreement to

7 Harter. ECF No. 27-3 at 75. Harter did not make a counteroffer or inform anyone

8 from the union that he would have settled for a 14-day suspension without the last

9 chance agreement. *Id.* at 76–78.

10       Branch 442 appealed the grievance to Formal Step A. ECF No. 27-5 at 6.

11 The CBA provides that at the Formal Step A meeting, a USPS management official

12 meets with a union steward or other union representative. ECF No. 27-6 at 11. The

13 issue at the Formal Step A meeting was whether USPS had the right under the

14 CBA's "just cause" provision to remove Harter. ECF No. 27-5 at 14. Branch 442

15 manager Eric Pardick and USPS manager John Dittmer attended the Formal Step A

16 meeting. ECF No. 27-5 at 6.

17       The aggrieved employee does not have the right to attend the Formal Step A

18 meeting. *Id.* at 3. Pardick's practice is to not have the aggrieved employee attend a

19 Formal Step A meeting. *Id.* at 6. Pardick believed Harter's presence could have

20 made the meeting more contentious than necessary. *Id.*

21

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS,
AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 6

In support of the grievance, Pardick submitted a thirteen-page document setting forth the union's contentions arguing why USPS had no right to remove Harter. *Id.* at 7, ECF No. 27-6 at 72–84. Pardick requested, as a remedy, that the notice of removal be rescinded and removed from his file and that Harter be made whole for any losses he suffered. ECF No. 27-6 at 84. Dittmer offered to settle the grievance by reducing the removal to a 14-day suspension. ECF No. 27-5 at 7. Pardick rejected the offer because he believed the charges against Harter were without merit; a suspension would add to Harter's lengthy disciplinary record; and he did not want management to feel free to impose unwarranted discipline on others. *Id*. Harter allegedly was not advised of this offer and consequently did not confer with Pardick afterwards about the value of a settlement without the last chance agreement. ECF No. 44 at 14.

USPS denied the grievance at Formal Step A and Branch 442 appealed to Step B. ECF No. 27-5 at 8. At Step B, a joint labor-management dispute resolution team ("DRT") has authority to resolve the grievance. ECF No. 27-6 at 12. The DRT did not resolve the grievance and reached impasse. ECF No. 27-5 at 8. After the DRT reached impasse, NALC appealed the grievance to arbitration. *Id.,* ECF No. 27-6 at 86.

On November 13, 2018, the arbitration hearing took place before Arbitrator Glynis Gilder. ECF Nos. 27-5 at 9. Jason Drost, a letter carrier, served as NALC's

advocate at the arbitration.  ECF No. 27-4 at 2–3.  At a pre-hearing meeting, Harter

provided Drost with certain documents including a Washington State Department of

Licensing report, showing Harter's driver license history, and paperwork from

Social Security and the Washington State Employment Security Department,

showing his employment history.  *Id.* at 3, ECF No. 27-3 at 86–91.  Drost did not

introduce the documents into evidence at the arbitration hearing because, based on

his experience arbitrating cases for NALC, he did not believe the arbitrator would

have admitted them into evidence.  ECF No. 27-4 at 3.

At the hearing, Drost made an opening argument, in which he argued that

USPS lacked just cause to remove Harter.  *Id.* at 4.  Drost called Pardick, Harter, and

Harter's mother, Sarina Harter, as witnesses.  *Id.*

According to Harter, USPS labor relations Jim Sykes told the arbitrator that

USPS had offered to settle the grievance by reducing the removal to a 14-day

suspension.  ECF No. 27-3 at 81.  Harter did not tell anyone that he was willing to

accept the settlement offer.  *Id.* at 82–83.

On November 23, 2018, Arbitrator Gilder issued an award denying the

grievance and sustaining Harter's removal.  ECF No. 27-8 at 102–110.

**Unfair Labor Practice Charge**

On March 4, 2019, Harter filed an unfair labor practice charge against Branch

442 with the National Labor Relations Board ("NLRB").  ECF No. 27-8 at 114.  In

his NLRB affidavit, although he thought "the Union did a pretty good job representing [him]," Harter identified certain ways in which he believed NALC did not provide him with adequate representation.  ECF No. 27-3 at 123.

On January 30, 2020, after investigating Harter's unfair labor practice charge, Region 19 of the NLRB dismissed the charge, finding insufficient evidence that the union had breached its duty of fair representation.  ECF No. 27-8 at 117.

Harter appealed the dismissal.  ECF No. 27-5 at 10.  NLRB's General Counsel denied the appeal.  *Id.*  In his March 23, 2020 letter denying Harter's appeal, NLRB's General Counsel wrote that "contrary to the contentions in your charge, there was insufficient evidence to establish that the Union's actions in the handling of your termination grievance constituted a violation of the National Labor Relations Act.  Further, there is insufficient evidence to establish that the Union unlawfully failed to inform you of the status of your grievance, including any settlement offers made by the Employer."  ECF No. 27-8 at 121.

**District Court Case**

On May 13, 2019, Harter commenced the present action against NALC and USPS.  *See* ECF No. 1.  Harter claims that NALC breached its duty of fair representation arising under the Labor Management Relation Act by (1) failing to provide Harter with timely notice of the offer of settlement; (2) failing to provide Harter with notice of the Formal A proceeding; and (3) failing to provide Harter with

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 9

1  copies of paperwork related to the grievance; and (4) failing to consider evidence

2  and witnesses for submission during the grievance and arbitration proceedings. *Id.*

3  at 6–7. Harter also asserts a cause of action against USPS, alleging that USPS

4  breached its contract by removing Harter without just cause. *See id.*

5        NALC argues that Harter's claim for the breach of duty of fair representation

6  fails as a matter of law. *See* ECF No. 27. USPS joins NALC's motion for summary

7  judgment and argues that if the duty of fair representation claim against NALC is

8  dismissed on summary judgment, the claim against USPS for breach of contract

9  must be dismissed as well. *See* ECF No. 31.

10                            **LEGAL STANDARD**

11        Summary judgment is appropriate when "the movant shows that there is no

12  genuine dispute as to any material fact and the movant is entitled to judgment as a

13  matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

14  317, 322 (1986). A genuine dispute exists where "the evidence is such that a

15  reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

16  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect

17  the outcome of the suit under the governing law." *Id.*

18        The moving party bears the initial burden of demonstrating the absence of a

19  genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party

20  meets this challenge, the burden shifts to the nonmoving party to "set out specific

21

facts showing a genuine issue for trial." *Id*. at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

## DISCUSSION

### I.    Duty of Fair Representation

Harter claims that NALC's handling of his grievance violated the duty of fair representation in the following four ways:  (1) NALC violated the duty of fair representation when Pardick rejected a pre-arbitration settlement offer by USPS to reduce Harter's discharge to a 14-day suspension, and did so without consulting Harter; (2) NALC failed to provide Harter with notice of the Formal A proceeding; (3) NALC failed to provide Harter with copies of the paperwork related to the grievance; and (4) the union representative failed to present certain witnesses or documents that Harter wanted presented at arbitration. ECF No. 27-3 at 162–63.

In response to NALC's motion for summary judgment, Harter also argued that union representative Ray's performance was "perfunctory" for failure to challenge "doctored" records of Harter's initial interview, specifically Harter's response to

whether he drove back to Washington State from California.  *See* ECF No. 43.  At oral argument, Harter further alleged that union representative Ray violated the duty of fair representation by failing to accurately communicate the offer of settlement at Informal Step A to her superiors.

A union breaches the duty of fair representation "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc*., 525 U.S. 33, 44 (1998).  "Because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should 'accord substantial deference' to a union's decisions regarding such matters." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985) (citing *Johnson v. United States Postal Service*, 756 F.2d 1461, 1465 (9th Cir.1985, as amended May 3, 1985)) (citation omitted).  Plaintiff bears the burden of proving that a union breached such duty.  *Beck v. United Food & Commercial Workers Union*, 506 F.3d 874, 879 (9th Cir. 2007).

To determine if a union has breached its duty of fair representation, courts must first assess whether the union's alleged breach involved a ministerial or judgmental act.  *Wellman v. Writers Guild of Am., W., Inc*., 146 F.3d 666, 670 (9th Cir. 1998).  If the union's conduct was ministerial, the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith.  *Id*.  If the union's

conduct was an act of judgment, however, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.  *Id.*

"Conduct can be classified as arbitrary 'only when it is irrational, when it is without a rational basis or explanation.'"  *Beck*, 506 F.3d at 879 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998)).  It is only when the union's actions or inactions in the course of exercising its judgment are "so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary."  *Beck*, 506 F.3d at 879.  A union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance, in interpreting particular provisions of a collective bargaining agreement, or in presenting the grievance at an arbitration hearing.  *Peterson*, 771 F.2d at 1254 (9th Cir. 1985) (citing *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1273 (9th Cir.1983)).  The Court will not attempt to second-guess a union's judgment when a good faith, non-discriminatory judgment has been made because "it is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued."  *Peterson*, 771 F.2d at 1254.  A plaintiff claiming the union has breached the duty of fair representation by acting in bad faith must present "substantial evidence" of "fraud, deceitful action or dishonest conduct."  *Demetris v. Transp. Workers Union,* 862 F.3d 799, 808 (9th Cir. 2017).

1    Harter does not contend, and presents no evidence, that NALC discriminated

2    against him.  ECF No. 27-3 at 109, 164.  Furthermore, Harter does not "argue[] that

3    the union was acting in deliberate bad faith: the union's effort to bring its grievance

4    to a successful conclusion in arbitration was genuine and at stages energetically

5    managed."  ECF No. 43 at 11.

6        The Court addresses below the merit of each alleged basis for Harter's breach

7    of the duty of fair representation claim.

8    **A. Rejection of Settlement Offer**

9        NALC argues that Harter's duty of fair representation claim premised on

10   union representative Pardick's rejection of a pre-arbitration settlement offer by

11   USPS to reduce the removal to a 14-day suspension without first consulting Harter

12   fails as a matter of law.  ECF No. 27 at 10.

13       "When employees make their union the sole bargaining representative with

14   the employer, they relinquish the right to control the settlement of their grievances.

15   Unions are free to negotiate and accept settlements even without the grievants'

16   approval."  *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989)

17   (rejecting duty of fair representation claim where union's acceptance of settlement

18   over employees' contemporaneous objections did not constitute bad faith); *see also*

19   *Perry v. Chrysler Corp. & Int'l Union, UAW*, No. 5-72051, 1978 WL 14023, at *5

20   (E.D. Mich. Apr. 28, 1978) ("Since, irrespective of the plaintiff's personal wishes,

21

the local union was empowered to reject a settlement offer which it reasonably considered not to be in the best interests of the membership, there could be no concomitant obligation on the part of the union to report this offer to the plaintiff").

Here, Branch 442 President Pardick was well within his authority to reject the settlement offer of a 14-day suspension at the Formal Step A meeting without Harter's approval and such action does not amount to a breach of the duty of fair representation. *See Shane*, 868 F.2d at 1061; *see also* ECF No. 27-6 at 11 ("In all grievances at Formal Step A, the grievant shall be represented for all purposes by a steward or a Union representative who shall have authority to resolve the grievance as a result of discussions or compromise in this Step."). Furthermore, the facts show that Pardick did not act in bad faith by rejecting the settlement offer because Pardick believed the charges against Harter were without merit; a suspension would add to Harter's lengthy disciplinary record; and Pardick did not want USPS management to feel free to impose unwarranted discipline on others. ECF No. 27-5 at 7–8. Accordingly, Harter's duty of fair representation claim based on Pardick's unilateral rejection of the settlement offer fails as a matter of law.

**B. Formal Step A Meeting**

Harter claims that Pardick breached the duty of fair representation by not inviting him to attend the Formal Step A meeting. ECF No. 27-3 at 162. Harter's argument fails for two reasons.

1    First, the Collective Bargaining Agreement does not provide an employee the

2    right to attend the Formal Step A meeting; rather, as noted above, it provides that

3    "the grievant shall be represented for all purposes by a steward or a Union

4    representative who shall have authority to resolve the grievance as a result of

5    discussions or compromise in this Step."  ECF No. 27-6 at 11.  Second, there is no

6    evidence that Pardick acted in bad faith by not inviting Harter to the Formal Step A

7    meeting.  Rather, it is Pardick's practice, as a union steward for 23 years, to not

8    invite the aggrieved employee to attend the Formal Step A meeting.  ECF No. 27-5

9    at 2, 3, 6.  Furthermore, Pardick was already familiar with the case and believed that

10   Harter's presence may make the meeting more contentious than necessary.  *Id*.

11       Accordingly, Harter's duty of fair representation claim premised on his

12   exclusion from the Formal Step A meeting fails as a matter of law.

13   **C. Grievance Paperwork**

14       Harter alleges that NALC breached the duty of fair representation because

15   "NALC would not provide or share any of the grievance filing, proceeding

16   information or paperwork to [him]."  ECF No. 27-3 at 163.  Harter claims that if the

17   file had been in his possession, he would have learned of the purported falsity in

18   Dokken's interview notes and he would have been apprised of the settlement offer

19   made at the Formal Step A meeting for a 14-day suspension and accepted the offer.

20   ECF Nos. 27-3 at 84, 43 at 14, 17–18.

21

1      "Arbitrary actions can breach the duty of fair representation only where the

2   act substantially injures the union member." *Beck*, 506 F.3d at 880.  "An employee

3   must establish that the act caused substantial injury, which can occur if the union's

4   arbitrary act or omission 'completely extinguishes the employee's [grievance]

5   right[s], . . . or where the union's arbitrary actions 'reflect reckless disregard for the

6   rights of an individual employee,' or 'severely prejudice the injured employee'

7   under circumstances that do not further the policies underlying the duty of fair

8   representation.'" *Mills v. Intermountain Gas Co*., 857 F. Supp. 2d 1034, 1051 (D.

9   Idaho 2012) (citing *Beck*, 506 F.3d at 880).

10      NALC argues Harter's contention related to nondisclosure of the grievance

11   paperwork fails because Harter's presumed acceptance of the offer is speculative

12   and, thus, he makes no showing that NALC severely prejudiced him by not

13   providing him copies of paperwork.  ECF No. 27 at 19.  The Court agrees.  As

14   discussed above, Harter was represented by union steward Pardick.  Pardick had the

15   authority to resolve the grievance as a result of discussions or compromise at Step A,

16   or affirmatively forego such compromise.  ECF Nos. 27-5 at 3, 27-6 at 11.  Even if

17   Harter had been made aware of the offer after the Formal Step A meeting, it is

18   speculative that Harter would have accepted the 14-day suspension settlement offer.

19   Harter never communicated a willingness to accept a suspension-only settlement

20   offer to Branch 442 representatives during the grievance process.  ECF No. 27-3 at

21

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS,
AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 17

77–78.  It is also speculative that such offer would still have been available after the conclusion of the Formal Step A meeting and upon Harter's receiving and reviewing the paperwork that he allegedly requested.

Harter's possession of the grievance file sooner and whether such possession would have affected the grievance process also is speculative.  At Harter's deposition, in response to whether possession of the grievance file would have changed the outcome of the case, Harter made no mention of detecting a falsity in Dokken's notes.  ECF No. 27-3 at 84–85.  Harter also obtained the interview notes that he now asserts were improperly fabricated prior to filing this suit.  ECF No. 43 at 7.  However, Harter did not identify Dokken's notes or the union's failure to challenge the notes as a basis for his duty of fair representation claim.  *See* ECF Nos. 1 at 6, 27-3 at 162–163.

Accordingly, any prejudice suffered by Harter due to the alleged nondisclosure of paperwork is speculative and his duty of fair representation claim premised on such nondisclosure must fail.  The Court will further address the flaw in Harter's argument related to the purported falsity in Dokken's interview notes below.

**D. Presentation of Documentary Evidence & Witnesses**

Harter claims that NALC breached the duty of fair representation by not interviewing all available witnesses, not allowing those witnesses to testify at

arbitration, and not presenting additional documentary evidence at the arbitration hearing.  ECF No. 27-3 at 163.

"A union's duty requires some minimal investigation of employee grievances, the thoroughness depending on the particular case; only an egregious disregard for union members' rights constitutes a breach of the union's duty." *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir.1985) (citing *Tenorio v. NLRB*, 680 F.2d 598, 601 (9th Cir.1982)).  A union's decision on what evidence to present or not present at arbitration in support of a grievance is an exercise of discretion.  *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1487 (9th Cir. 1993).  "It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir.1985).  As long as the union has some reasoned explanation for its decision not to present certain evidence, a court may not second-guess that decision.  *See, e.g.*, *Patterson v. Int'l Bhd. of Teamsters*, 121 F.3d 1345, 1349 (9th Cir. 1997) ("[The Union's] reasoned tactical decision not to present the medical evidence does not amount to a breach of the duty of fair representation.").

At the arbitration hearing, union advocate Drost called Harter, Harter's mother, and Branch 442 President Pardick as witnesses in support of NALC's grievance.  ECF No. 27-4 at 4.  Harter testified that during the trip from California to Washington State, he rode as a passenger but did not drive.  *Id.*  Harter further

testified that he did not perform paid work for his parents' car dealership.  *Id.*

Harter's mother testified to the same.  *Id.*  Harter argues that NALC should have

interviewed and called his father, brothers, and his brother's girlfriend to testify that

he rode as a passenger during the trip from California to Washington State.  ECF

No. 27-3 at 166–67.

The documents that Harter claims Drost should have presented at arbitration

were (1) the insurance policy of his parents' car dealership, showing that Harter was

not listed as a driver; (2) Washington State Department of Licensing paperwork

showing that he had an ignition interlock system installed on his vehicle; and (3)

Social Security and Washington State earnings reports, showing that he received no

pay from Ruby Street Motors.  ECF No. 27-3 at 165.  Drost opined that "to the

extent that these documents were already in the grievance file, they were already

part of the record before the arbitrator, and there was no need to present that into

evidence at the hearing."  *Id.*  Drost also opined that "the documents that Harter

asked [him] to introduce were not relevant and would not have made a difference to

the outcome of the case."  *Id.*  Furthermore, Drost believed, based upon his

experience, that the arbitrator will generally not allow a party to introduce into

evidence at the hearing any documents not contained in the grievance file.  *Id.* at 2.

Based on the foregoing, the Court finds that NALC's decision not to interview

all the persons identified by Harter as well as the decision not to present additional

witnesses or documentary evidence at the arbitration hearing do not amount to a breach of the duty of fair representation. *See Patterson*, 121 F.3d at 1349. First, NALC's alleged failure to interview additional witnesses does not constitute bad faith or arbitrariness where the evidence shows that NALC investigated the circumstances surrounding Harter's termination and submitted a full and detailed statement of relevant facts based on its investigation prior to arbitration. *See* ECF No. 27-6; *see, e.g.*, *Fisher v. Lucky Stores, Inc., No. C93-1019 FMS*, 1994 WL 125104, at *3 (N.D. Cal. Apr. 4, 1994) ("The Union may not have conducted as extensive an investigation as [Plaintiff] would have liked, but that does not constitute bad faith or arbitrariness.").

Second, with respect to Drost's decision not to call additional witnesses at the arbitration hearing, those witnesses' testimony on the issue of whether Harter drove or was a passenger on the trip from California to Washington State would have been duplicative of Harter's own testimony and his mother's testimony. *See* ECF No. 27-3 at 166. Third, regarding the additional documentary evidence, union steward Drost made a strategic decision not to introduce evidence that was either duplicative, irrelevant, or inadmissible. *See* ECF No. 27-5 at 9 (grievance file contained a form entitled *Washington Automobile Insurance ID Card*, which listed insured drivers for Ruby Street Motors, as well as a form from Washington State Department of Licensing entitled *Employer Declaration for Ignition Interlock Exemption*, showing

1   that Harter had an ignition interlock device installed on his personal vehicle).  Drost

2   thus provided a reasoned explanation for not presenting the documents at the

3   arbitration hearing, and the Court may not second-guess Drost's decision.  *See*

4   *Patterson*, 121 F.3d at 1349.

5          Accordingly, Harter's duty of fair representation claim premised on NALC's

6   failure to interview witnesses and Drost's failure to proffer additional evidence at the

7   arbitration hearing must fail.

8   **E.  Failure to Challenge Interview Notes**

9          In response to NALC's motion for summary judgment, Harter claims for the

10  first time that NALC breached the duty of fair representation because the union

11  failed to challenge "doctored" investigative interview notes by USPS manager

12  Dokken. ECF No. 43 at 12–14.  Harter alleges that Dokken altered the record of the

13  investigative interview by adding the pronoun "I" to the statement "drove back" to

14  reflect a non-admission by Harter that he personally drove back from California.  *Id*.

15  Harter further claims that union steward Ray should have "suspected a fabrication"

16  and the failure to challenge the record produced by Dokken amounted to

17  "perfunctory representation."  *Id*. at 14.

18         A union may breach its duty when it processes a grievance in a perfunctory

19  fashion.  *Eichelberger v. N.L.R.B.*, 765 F.2d 851, 854 (9th Cir. 1985).  As discussed

20

21

1  *supra*, a union acts arbitrarily where its actions are "without a rational basis or

2  explanation."  *Beck*, 506 F.3d at 879.

3       NALC argues that this argument fails because there is no genuine dispute that

4  Harter said, during the interview, "I drove back."  ECF No. 48 at 5.  The Court

5  agrees.  In Harter's sworn NLRB affidavit, whose contents he certified as "true and

6  correct," Harter wrote that at the interview, "I said, 'I flew down there' and 'I drove

7  back' but I didn't mean that I physically flew the plane down there (obviously) nor

8  did I mean that I physically drove the car back."  ECF No. 27-3 at 122, 125.

9  Harter's attempt to now retract that statement, ECF No. 46 at 2, does not create an

10  issue of fact to avoid summary judgment.  *See Kennedy v. Allied Mut. Ins. Co.*, 952

11  F.2d 262, 267 (9th Cir. 1991) (courts may exclude "testimony that flatly contradicts

12  earlier testimony in an attempt to 'create' an issue of fact and avoid summary

13  judgment"); *see Markowitz v. United Parcel Serv., Inc.,* 711 F. App'x 430, 431 (9th

14  Cir. 2018) (finding worker's contradictory statements on ability to work failed to

15  create a genuine issue of fact for trial).  Harter's argument that the union breached its

16  duty by failing to challenge a document that purportedly added a pronoun to his

17  response is without merit where Harter admits that he did, in fact, use that pronoun

18  in his response.

19       There is a rational explanation as to why union steward Ray did not challenge

20  Dokken's notes:  she subjectively believed it was an accurate record of Harter's

21

response, which Harter later confirmed.  ECF No. 48-2 at 12–14 (Ray testifying that "[Harter] was very specific in saying 'I drove back.'").  Thus, Ray's failure to challenge Dokken's notes was not arbitrary, and she did not act in a perfunctory manner.  As part of her investigation, Ray also requested that Dokken provide a copy of the investigative interview notes to review.  ECF No. 44-2 at 12.

Accordingly, Harter's duty of fair representation claim premised on the union's failure to challenge Dokken's notes from the investigative interview must fail.

## F. Communication of Settlement Offer at Informal Step A

At oral argument, Harter presented a new basis for his duty of fair representation claim alleging that union steward Ray did not accurately communicate the offer of settlement at Informal Step A to Branch 442 President Pardick.  Harter alleges that USPS manager Dokken dropped the last chance agreement from the settlement offer at the Informal Step A meeting with union steward Ray and that NALC conceded the same in its reply memorandum.

The Court finds no support for the underlying factual allegation that Dokken modified the offer at Informal Step A or the assertion that NALC has conceded the same.  Rather, the record supports that at the Informal Step A meeting, Dokken offered to settle the grievance by reducing the removal to a 14-day suspension with a last chance agreement.  ECF Nos. 27-1 at 14, 44 at 12; *see also* ECF No. 27-3 at 72–

73 (Harter testifying that Dokken offered to settle the grievance at the Informal Step A meeting with a 14-day suspension and a last chance agreement); *see also* ECF No. 27-6 ("Management offered to reduce the Notice of Removal to a 14-Day Suspension and an additional Last Chance Agreement.").  Harter's version of material facts provides that "the only negotiations at the Informal A negotiations was management's offer of a 14-day suspension with an unspecified Last Chance Agreement" and "at the Formal A session management offered for the first time to drop the Last Chance Agreement."  ECF No. 44 at 14.  It is also undisputed that union steward Ray communicated this offer to Branch 442 President Pardick.  ECF No. 44-2 at 53 (Pardick recalling that "Amanda Ray [had] stated that there was a Last Chance Agreement and a 14-day suspension.").

Accordingly, there is no factual basis for Harter's allegation that Ray failed to accurately relay the settlement offer made at Informal Step A to superiors at Branch 442 or that Defendants have conceded the same.

## II.    Breach of Contract Claim Against USPS

USPS joins NALC's motion for summary judgment and argues that dismissal of Harter's duty of fair representation claim simultaneously mandates dismissal of the breach of contract claim asserted against USPS.  *See* ECF No. 31.

"[T]he two claims are inextricably interdependent. To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their

1  discharge was contrary to the contract but must also carry the burden of

2  demonstrating a breach of duty by the Union." *DelCostello v. Int'l Bhd. of*

3  *Teamsters*, 462 U.S. 151, 164–65 (1983); *see also Soremekun v. Thrifty Payless,*

4  *Inc.*, 509 F.3d 978, 987 (9th Cir. 2007) ("In such a case, the employee bears the

5  burden of proving two claims—first, that the employer breached the collective

6  bargaining agreement, and second, that the labor union breached its duty of fair

7  representation.").

8      Having found no breach of the duty of fair representation, Harter's claim

9  against USPS for breach of contract must be summarily dismissed.

10                          **CONCLUSION**

11      Mr. Harter's arguments  challenge the factual underpinnings of his removal.

12  However, the issue before the Court is not whether the undisputed facts show that

13  Mr. Harter was behind the wheel of a car returning to Washington State from

14  California.  Rather, it is whether the undisputed facts show that NALC acted in an

15  arbitrary manner in processing the grievance.  The Court finds that the undisputed

16  facts show that NALC did not breach the duty of fair representation and that NALC

17  is entitled to summary judgment on Harter's duty of fair representation claim.  Since

18  the duty of fair representation claim and breach of contract claim against USPS are

19  "inextricably interdependent," USPS also is entitled to summary judgment.

20  / / /

21

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS,
AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 26

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendant NALC's Motion for Summary Judgment, **ECF No. 27**, joined by USPS, **ECF No. 31**, is **GRANTED**.

2.      Plaintiff's claims for breach of the duty of fair representation against NALC and breach of contract against USPS are **DISMISSED WITH PREJUDICE.**

3.      Judgment shall be entered for Defendants.

4.      Any remaining, pending motions in this matter are **DENIED AS MOOT**, and any hearing dates are hereby **STRICKEN**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** February 1, 2021.


_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S MOTION FOR SUMMARY JUDGMENT ~ 27